UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-462-GWU

LINDA SAMS,                                                                                    PLAINTIFF,

VS.                                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
If yes, the claimant is not disabled.  If no, proceed to Step 2.
See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
impairment(s) significantly limiting the claimant's physical or
mental ability to do basic work activities?  If yes, proceed to

1

06-462 Sams

            Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

06-462 Sams

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

06-462 Sams

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately

6

06-462 Sams

portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Linda Sams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease and "residuals status post femur fracture and tibial plateau fracture." (Tr. 20).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Sams retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 20-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff could perform any jobs if she were able to perform "light" level exertion, with the option of sitting and standing every 45 minutes, and with no climbing, stooping, crouching, or crawling.  (Tr. 617-8).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the local and national economies.  (Tr. 618).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged an inability to work due to back and leg pain following a January, 2004 motor vehicle accident, as well as depression and stress.  (E.g., Tr.

602-3, 606, 613).  The ALJ determined that Mrs. Sams did not have a "severe" mental impairment (Tr. 21), despite the fact that she had been briefly psychiatrically hospitalized in June, 2004 and given a discharge diagnosis of recurrent major depression and an organic mood disorder with a Global Assessment of Functioning (GAF) score of 45.  (Tr. 183).  A GAF score of 45 reflects serious impairment in occupational, social, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), (DSM-IV-TR), p. 34.  The psychiatrist, Dr. C. Vora, prescribed Lithium and Lexapro and stated that the plaintiff's prognosis was "fair with psychiatric compliance."  (Tr. 183).  However, it does not appear that the plaintiff obtained further mental health treatment from a specialist.  She did obtain medications such as Xanax from her family physician.  (E.g., Tr. 390, 462).

Dr. Kenneth Starkey conducted a consultative psychological evaluation on November 12, 2004.  (Tr. 281).  At that time, Mrs. Sams reported that she was on Lexapro, Remeron, and Alprazolam (generic Xanax).  (Tr. 285).  She described being depressed and irritable and stated that her interpersonal relationships were limited and was "angry most of the time," although she had always been that way. (Id.).  In any case, Dr. Starkey diagnosed a depressive disorder, a pain disorder, nicotine dependence, and "rule out" borderline intellectual functioning.  (Tr. 286). He assigned a current GAF score of 55, reflecting "moderate" impairment per the DSM-IV-TR.  He added that, with weekly psychotherapy, Mrs. Sams could have improvement within six months which would render her "psychologically appropriate

06-462 Sams

for vocational training or placement at that time." (Tr. 286-7). He opined that without such treatment "her prognosis for being able to sustain any gainful employment remains guarded to poor," and that she was likely to respond to the pressures found in most day-to-day work settings by becoming increasingly depressed and irritable. (Tr. 287-8).

A state agency reviewing psychologist, Dr. H. Thompson Prout, reviewed the record at this point and concluded that a residual functional capacity assessment would be necessary; he did not select options on the Psychiatric Review Technique Form (PRTF) which would have indicated that he did not believe the plaintiff's impairments were "severe," or that they were "severe" but not expected to last 12 months. (Tr. 471). Although he felt that Dr. Starkey's opinion should be given limited weight due to its lack of specificity, Dr. Prout indicated that Mrs. Sams would be "moderately limited" in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (Tr. 486-8). Another state agency psychologist, whose name is illegible, later affirmed Dr. Prout's opinion. (Tr. 499-501).

Therefore, it appears that all of the examining mental health specialists and mental health reviewers made findings consistent with a "severe" mental impairment. The determination of no "severe" mental impairment is not supported

9

06-462 Sams

by substantial evidence, and a remand will be required for further consideration of this issue.

The plaintiff alleges several other errors on appeal.  Most important, she argues that a functional capacity assessment by Dr. Steven Spady, dated December 22, 2005, was improperly rejected by the ALJ.  (Tr. 563-7).  The opinion, among other items, limits the plaintiff to less than full-time sitting and standing.  If this opinion were entitled to controlling weight, it would clearly preclude full-time work activity.  The ALJ rejected the opinion, in part, because it was inconsistent with the other evidence.  While Dr. Spady's report indicated that Mrs. Sams would be greatly limited due to her low back and right knee pain her orthopedic physician, Dr. David M. Burandt, had released her to return to regular duty work in June, 2004, noting that pain was "not much of a problem," her knee had a full range of motion and was not swollen, and there was no instability of the ankle.  (Tr. 545-6).  In April, 2005, he noted that she could stand and walk normally and had a full, painless range of motion of the hip and knee, although there was some tenderness and she might benefit from a walking boot.  (Tr. 543).  These findings are clearly not consistent with the extreme limitations listed by Dr. Spady.  A consultative physical examiner, Dr. Bobby J. Kidd, also examined the plaintiff in November, 2004, and found that she had a slight limp, was limited to bending forward 45 degrees and could only do about ten percent of a squat, but was able to walk on her heels and toes, stand on one leg at a time, and had no spasm or tenderness of the neck,

06-462 Sams

knee, or dorsolumbar spine.    (Tr. 290-3).    State agency physicians who subsequently reviewed the record concluded that the plaintiff would have physical restrictions consistent with the ALJ's hypothetical question.   (Tr. 491-8, 518-25). Thus, there <u>was</u> a significant amount of objective evidence offsetting Dr. Spady's restrictions.  Moreover, it is not clear to what extent Dr. Spady actually treated the plaintiff.  Although some office notes from the Clay County Medical Center indicate that he saw the plaintiff prior to her alleged onset date of January, 2004 (e.g., Tr. 444, 465), it appears that the physician who more recently treated her was Dr. Werner Grentz.  (Tr. 381-92, 537-9).  Other records from after the alleged onset date also suggest that her primary family physician was Dr. Grentz (Tr. 174, 184, 290, 537-9), an additional reason for discounting Dr. Spady's opinion.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 8th day of August, 2007.



**Signed By:**

<u>*G. Wix Unthank*</u>

**United States Senior Judge**

11